And call our second case of this morning, number 16-3069, Freed v. J.P. Morgan, Chase & Co., Messrs. Massey and Pozzolo. Did I say that correctly, Pozzolo? Yes, John. Thank you. Whenever you're ready, Mr. Massey, take your time. Thank you. I think I'll just give my friend a minute to sit down here. That's fine. While we're waiting, did you reserve time for rebuttal? Yes. With the court's permission, may I please reserve three minutes for rebuttal? Okay. Thank you, Your Honor. May it please the court, we urge this court to adopt Fannie Mae's consistent interpretation. Just for the record, I didn't say Fannie Mae. I'm sorry. Jonathan Massey, representing the appellants. Thank you. J.P. Morgan, Chase. As I said, in this statutory interpretation case, we urge the court to follow Fannie Mae's consistent interpretation of section 4902D, which is reflected in every version of the Fannie Mae Servicing Guide since the year 2010. You've got the Fannie Mae Servicing Guide saying it's helpful. You've got the HAMP provision saying it's helpful. But does the statute help you? Yes. Well, that's certainly an important question, Your Honor. And let me give four answers to that, if I may. No, you go ahead. I'm interested in the distinction between a modification and a refinance. There is a distinction. And we believe Congress addressed those questions in different ways but got to the same result. In other words, as Your Honor knows, the refinance provision was expressly amended in 2000 in the definitional part of the HPA. But there was also activity with respect to modifications in the substantive provision of 4902D. And it's quite common for Congress to attack or address issues in a different way using different language but still reach the same result. That canon can be overcome. And here it is overcome because the language achieved the same result. And I think we know that if you look back at Representative LaFalse's comments in 2000, he made three essential points in the legislative history, which is at pages 13 to 17 of the reply brief. He said, first, we want to use updated amortizations in all these areas. We want the most recent values. Second, we want to conform to what is uniform industry practice in all these areas. That includes loan modifications. And then third, with respect to refinances specifically, he did say we need to use the updated property valuations because that will avoid punishing consumers whose housing values have appreciated. You know, there's a particular justice, God rest his soul, who would say that what you just said make no difference at all. And you've got to look at the language of the actual statute as opposed to what someone says on the floor of the House or the Senate. That is true. But here I'm not just relying on those comments. I would rely on the statutory structure and the purpose. Because if we're all agreed that you use updated values for refinances, we're all agreed that you use updated values for permissive or consumer-initiated cancellation, then what was Congress doing if it adopted a different rule for loan modifications? There's no – it turns the statute on its head because Congress has adopted and the regulators have adopted a hardship standard for loan modifications, right? If it has to be more than 30 – the mortgage payment has to be more than 31 percent of your gross income. And so it really would be hard to believe that the statutory structure is meant at punishing the most vulnerable people who are suffering hardships the most. I mean, our interpretation is shortening PMI payment periods for the vast majority of consumers. Not for this one. Not for this one. That is correct. It extended about, what, 10 years? It did, although her loan modification cut her interest rate from 6.25 percent to 2 percent. What amount of – was she paying for private mortgage insurance? She was paying about $250, $252 a month, is what the complaint alleges. But of course, I think if you do the math, I think her overall principal and interest payment was cut by something like $1,500 or $1,400. Just to digress for a second before we get back to those truly important questions. Yes. Here you've got a situation where a woman borrows roughly $498,000 initially for a house that was appraised at $570,000, but she had to take the $553,000, $330,000 number. Right. So the loan to value is about 90 percent, roughly. She gets – under HAMP, she gets the loan reduced from $497,000, $498,000 to $463,000, but now the broker's price opinion says it's only worth about $420,000, no longer $570,000. It's not a full appraisal. And so you're saying, in effect, okay, we need to have this insurance. But the trouble is she's been paying for the insurance, and if now she's underwater from the get-go by $43,000 instead of having a loan to value that was only 90 percent, it's now 100 and some percent. Then – and the whole purpose of the insurance is to help her help the person who's holding it to be protected. Isn't the burden on her even greater than it was heretofore when the house was valued at $553,000, $330,000? Well, the burden on her, unfortunately, is greater, but so is the risk to the lender. And I think Your Honor pointed out, we are a pass-through entity, Chase. We're the mortgage servicer. Another company is providing the mortgage insurance. But she's going to pay an additional $30,000 that – she's hurting more now than she was heretofore. Well, she's hurting less after the loan modification, Your Honor. I think that on – she's not seeking to rescind the loan modification. She is not trying to undo that. It's a $25,000 break in terms of the amount owed on the loan, but also the value of the house has come down from $570,000 to $420,000. That is correct. But the statutory purpose is really to balance the interests of the lender and the consumer in those instances. Congress wanted to tether PMI to the actual default risk, as it were. It didn't want unnecessary PMI, but it also recognized the value of PMI. And Plaintiff concedes that even at page 9 of her brief. She recognizes that PMI is necessary to ensure that these – particularly that these populations will continue to get credit. If there's no PMI, there won't be mortgages available for these people. So Congress is balancing that. Why don't we look at the text of this? The text, yeah. Let's start there and then we'll go on. I would appreciate that because I did address sort of the refinance angle. But I think the text also is capacious enough to support our statutory purpose. First is, if you want to be a strict literalist, Justice Scalia – You're looking at 490118, is that right? Well, I'm looking at – page 4 of the blue brief is 4902D. Okay, 4902D. And my first argument would be a strict literalist argument that the first clause, the first sentence, talks about agreeing to a modification. If the parties agree to a modification. And so the agree to – what must be agreed to is the modification. Does she agree to extend her PMI obligation to – or to replace the original value of the home? Well, she agreed – well, two answers. Does she agree to replace the appraisal with the BPO? Our view is she agreed to the modification, which is what the statute says. It was the second she did – I'm sorry. I know we're – I'm sorry. I know we're limited to the complaint. Right. So we don't know what Form 3157 says. Well, the form is actually – yes. In fact, it's silent as to original or updated value. It doesn't say value. So there's – but our argument is it's a matter of law. The statute provides uniform rules that mortgage services across the country have to use. And the amicus brief from the six trade associations really warns that if there is to be a case-by-case inquiry without the uniform standard rules, then there will be much – the consumer credit will be less, and there will be an increase, become more expensive and less available. But anyway, my first point with you, what you have to agree to is the modification, not necessarily every term and condition. The agreed to language refers to modification. So I would say also second, you can get to the same result by saying she impliedly agreed to the things that were an integral part of the modification. In other words, we – there's no dispute that a updated valuation is a precondition, a prerequisite, a condition of the law. Do you know that? Yeah. Well, as a matter – those happen – those things happen regardless of the assent of the parties because of the imputation of background rules. Like, for example, the Blaisdell – I would say four examples of implied contracts that the parties knew nothing about, right? Blaisdell case in 1937, the Minnesota mortgage moratorium statute. No one discussed it, but it gave the borrower extra time under her law, and that's background principles. The United States trust case in 1977, the Supreme Court said that a 1962 covenant between New York and New Jersey limiting how mass transit revenues could be used was part of the party's bargain. The General Motors against Romaine case in 1988 said that a 1987 Michigan statute formed part of the party's agreement and expressly said that it didn't have to be assented to by the parties. The Winstar case from the Supreme Court in 1996 said that the financial accounting regulations governing savings and loans were part of the agreement between the United States and people who took over those savings and loans. To make the argument you make, because it looks to me like it isn't explicit that calculating the termination date on the basis of the original value was changed so that they could calculate it on the basis of a broker's price opinion. To make the argument that you're making, it seems that you have to say that either the HAMP rules or the Fannie Mae servicing guidelines are impliedly incorporated into the modification agreement. We would say that. We would say that those, not necessarily all of them, but certainly the ones that are conditions of the law. We're not saying they're wholesale incorporated, but if there's a condition of the law. Could the borrower sue to enforce the HAMP rules? For example, yes. For example, the example I would give is if we use the original value to another borrower instead of the updated value, that borrower would say you should be using the updated value. I can't find a single case where it says that there is a private right of action to a borrower with regard to either the HAMP rules or the Fannie Mae servicing guidelines. Right. I'm not saying there's a private right of action, Your Honor. I'm simply saying that the agreement between us and the plaintiff includes, as an implied term, anything that's a condition of the loan. And this is a condition of the loan, that there be an updated valuation. So I'm not saying that there's a private right of action. I'm not saying the HAMP guidebook is privately enforceable. Well, this is for the protection of consumers, and I'm having a little hard time understanding how it's in the interest of consumers to have as a condition of a loan modification a valuation they don't even know about. Well, we don't know whether they know about, and there is a Regulation B that requires that the valuations be provided to consumers. If she knew about it, why did she keep asking via letter through her counsel as to what was going on here? Well, I think she knew that her – she doesn't say that she didn't know about the valuation. She didn't know the basis for the PMI calculation. That was her series of complaints. And as you know, the limitations issue is separate ground. We think she did know in October 2012 that all the elements she needed to bring her case, she knew there was a violation at that point under her theory. I think under Probodnik, you need to know the source of that. She kept trying to figure out what's the source of that, and she didn't know that until a year and a half later. Well, in Probodnik, you didn't have to know that there – you knew that there was an adverse employment action already. You didn't have to wait until you knew the reason for it. Here, she knew that we were calculating her PMI up to 2026, and the reason for that was not an element of her case. She did bring the action within two years of when her PMI should have terminated under the original valuation. She did. You're right. It terminated under – in her theory, in 2014, and she did bring the case in 2015. But she knew before then that there was – that what our position was as to when the PMI termination would occur. And also, in one sense, she really wasn't injured until after the initial PMI obligation was to have stopped, whether it be 2016 or 2014, depending on how you calculate it. Well, the limitation statute here refers to violation. It doesn't use the word injury. So according to the HPA limitation statute, the obligation to sue runs when you're aware of the violation. And she knew, under her theory, the violation in October 2012. I guess you could argue the violation occurs when she has to continue to make the payments after the date when otherwise it should have terminated. That's when she feels the effect of the violation. That's when she – well, right. But I think the word – if we're going to be textualists again, you know, the word violation is different from injury. There are – of course, this case – this court has many cases. Judge Ambrose has several. Where words – you know, the Lafferty case, which involves the two venue statutes, dismiss, transfer for want of jurisdiction. It's the Lafferty case in 2007, where under 14 – you were comparing 1406 and 1631. One of them says that the second – the transferred case is timely filed so long as it was timely filed in the first instance. 1406 says that or 1631, I can't remember. One says it and one doesn't. It's just like the refinance provision. And Judge Ambrose correctly said you have to read the statutes together to make sense of the statutory structure. And the difference in language was not dispositive. And Your Honor construed those statutes in peri materia. And there was another case Your Honor wrote in 2010 called the Bankoff case, where there was a Social Security employee and supervisor who were both threatened by the defendant. And the issue was, is the word employee or official? Are those different words or can they be construed together? And Your Honor construed them together and reached the right result there because you said that was Congress's purpose and that was the way to make sense of the statutory structure. I think the same principle applies here. But with regard to the statutory limitations, I mean, Dobnick says that a person needs to know of the existence and source of the actual injury. Right. She knew that there was a coming in the future, a statement made to her that she's going to have to pay 10 more years of insurance. She kept asking, what's the reason, what's the source of this? And she didn't get that answer until 2013, did she not? I don't think that Dobnick was using the word source in the sense of what is the defendant's reason or motive. As I recall in Podobnick, there were adverse employment actions in 1993 and 1998. And it didn't become clear until 2000 that they were on account of age discrimination. And the court said it didn't matter that it didn't know the reason until 2000. You had to sue earlier. And I think here the particular reason that we were extending PMI wouldn't have mattered to her. What if it was just a mathematical error? She still knew of the violation in October 2012. I know my time is over. Excellent. Any other further questions? No, no. Thank you, Your Honor. We'll get you back in rebuttal. Mr. Vizzolo. Good morning, Your Honors. Antonio Vizzolo on behalf of Appellant Janine Freed. I'd like to reserve three minutes for additional rebuttal time. Did you appeal at all? You didn't appeal, did you? I'm sorry? You didn't appeal. Oh, I'm sorry. No, I didn't. Correct. We're in that good position where you're happily for once, you know. Your Honor, I just wanted to start off with the discussion of the injury to Ms. Freed. And as Justice Banaski pointed out, the damage to the plaintiff was approximately an additional 12 years of PMI payments. Mrs. Freed is obligated to pay $252 a month for an additional 12 months for an additional 12 years. When that adds up, it's over $36,000. So the harm here is concrete. And when you get to the interpretations that J.P. Morgan is trying to foster here is it stands statutory construction on the head. What you have to do is look at the plain and ordinary language of the statute. And if you look at the statute, it defines the original value. By the way, before we get there, just clear one bit of debris. Are you seriously alleging any wrongdoing by the parent company? I'm sorry. I'm sorry, Your Honor. Correction. The parent company was named as a defendant in the complaint. There was no discussion in the decision in the district court about the liability of the parent company. Are you still making that claim that the parent company is liable? We are not making that claim, Your Honor. Okay. Fine. Good. Let's go back. So when you look at the plain statute, it's very clear what the original value is. It's alluded to. There was a corrections act passed in 2000 that deals with modifications. But as the justice has observed, those modifications, those agreements, those additional terms have to be agreed to. There's absolutely nothing in the paperwork from Mrs. Freed that discusses a reevaluation of the property at the time of the modification. There's nothing in the form 3157, which is the standard form Fannie Mae uses. There's nothing in the HBA that discusses the revised valuation or the BPO used. Is there an implied agreement? Your Honor, no. There is no implied agreement here. There is no implied agreement. The cases that are cited by defendant concern unjust or implied covenant, good faith, and fair dealing. But I think when you look at the Fannie Mae guidelines and the HAMP guidelines in the Treasury Department, they concern obligations between J.P. Morgan and the Fannie Mae and Freddie Mac. And as the court, as the justice has observed, there have been a number of cases where consumers have sued Fannie Mae and Freddie Mac on the third-party beneficiary status, arguing that those guidelines, that they're third-party beneficiaries of those guidelines. And in every situation the courts have held, those guidelines do not govern the terms between the consumer and the servicer, such as J.P. Morgan here. So there is no implied term, Your Honor. Address the statute of limitations for a second. Sure. She did know in 2012 that they had extended this. And my guess is, you were her attorney then, too, that wrote the letters. No, Your Honor. Her attorney wrote the letters. So, one, there's going to be ten years' additional payments. Now, she didn't know necessarily the reasoning for that, and she didn't find that out until the following year. But did she not then know in 2012 that there was an injury? It hadn't yet occurred because she still had to make payments, but it was coming. Yes, Your Honor. Well, there's two aspects to it, and the HPA has a number of different aspects. There's the disclosure requirement, and there's also the automatic termination requirement as well. And when you're dealing with the payments, the payments weren't scheduled to come in until 2014. She filed her complaint within the two-year statute of limitations. So the actual monetary damages didn't accrue until 2014, well within the statute of limitations period. With respect to the disclosure, she knew that there was an addition. With respect to the modification, the principal balance changed in the monthly interest rate. I'm sorry. The interest rates, the principal balance changed as well as the monthly payment. She had no understanding of why the PMI period was pushed out an additional 12 years, which is why she submitted a number of letters to Chase to try to find out what happened. So there was no basis for her to understand. There were modified terms in the loan. The principal balance was modified. But there was no understanding whatsoever that that would push out the PMI an additional 12 years. There was no basis for her to understand why that occurred, which is why she contacted Chase in the first place to try to find out why that was happening. And what she got back was some standard boilerplate letters indicating essentially nothing until 2013 when indicated they used a BPO in place of the sales price or the appraisal value to reevaluate the property at the time of the modification. That's what's triggered her investigation and understanding why it was pushed out the additional 12 years. So when you look at the statute of limitations argument, and the other point I want to raise with the statute of limitations argument is it's a factual inquiry as well. I think it's inappropriate to render a decision on the 12B6 motion at that point when there are differences in alleged facts in the complaint. There's not a full record to develop to determine the facts in the case. So in addition to the discussion of the accrual, there's also the factual inquiry, and we believe that the district court was proper in denying the motion to dismiss on the statute of limitations. Should the district court have waited until facts developed in this matter? I'm sorry? Should the district court have waited on the statute of limitations issue before deciding? Your Honor, I think the decision, the statute of limitations argument, is more properly developed at the summary judgment stage after facts should be developed, but they moved to dismiss at that point. So I'm not sure if it was appropriate to render a decision based on the record before the court at that time, but I think it was more appropriately dealt with after the facts were discovered. Sure. Well, what about the practical implications? Chase says that the uniform statutory scheme contemplated by the HPA would be frustrated by a case-by-case inquiry, that it would work to the disadvantage of those homeowners where the property has appreciated, and perhaps most, at least in terms systemically, most importantly, that this would disrupt the securitization of these kinds of loans. Yes, Your Honor. I think that's a secondary question. I think the analysis has to start off with, is the statute clear? Is the language clear? I understand that. And once you get past that point, this discussion is, I mean, we cited a number of cases in the briefing that says you stick with the statutory construction. If the language is clear, that's the end of the inquiry. But with respect to your particular question, Your Honor, I think the discussion on the disruption of the mortgage industry is speculative. I mean, there's nothing in the record to suggest that the concrete harm that they're suggesting. We know what the concrete harm to Ms. Freed is. She's got to pay an additional $36,000 in PMI insurance. But with respect to those other issues, I think a lot of the discussion is in general. $36,000 or $30,000? I'm sorry? $36,000 or $30,000? $36,000, Your Honor. It's $250 a month. That's times 12 months, times 12 years. Depending on whether you start in 14 or 16. Initially she was to have finished up in 16, right? Correct. But you're saying under this? Under the modification, she pays over $36,000 in additional PMI. If you terminate in 14, okay. Correct. Sorry. Sorry for that ambiguity. And with respect to these additional issues, I think there's a lot of premature arguments here. I think the discussion on the benefit to other people, I think that's more appropriately dealt with at the class search stage. I think those involve issues of typicality and adequacy of the plaintiff here. So I think that kind of discussion and a lot of the issues raised in J.P. Morgan's brief is a little premature. Can I just go back? I'm trying to figure out, is this 14 or 16? If 78% of 498 is what, 431? And that would be 2016, you would reach it under your normal amortization, correct? And if you reduce the 498 to 463, you're saying that you reach the 78% in 2014, is that right? Correct. But don't you still base it on the initial appraisal or the lesser of the appraisal and the sale price of 553,330? No, I guess what you're taking is the 78% of the actual loan. Correct, Your Honor. I see what you're saying. Okay, I got it now. Anything further? Unless Your Honors have any additional questions. Thank you very much. Thank you, Your Honors. Well, can I just ask you a question at the outset here? You're saying that there is an agreement, at least implied, that you can substitute the BPO for the appraisal. And that's based on either the Fannie Mae servicing guidelines or the HAMP regs. But when I look at the 4908B of the statute, it says that the provisions of the chapter supersede any conflicting provision relating to the servicing of the loan entered into by either Fannie Mae or Freddie Mac or any private investor. Why doesn't that say that the statute supersedes anything that the HAMP guidelines or the Fannie Mae guidelines may provide? Well, we think that the statute should be read in light of those guidelines. Those guidelines are useful data in interpreting what the statute means. We're not contesting that the statute obviously ranks higher than the Fannie Mae guide. But in trying to understand what 4902D means, we would look to Fannie Mae's consistent interpretation since 2010. The statute does rank higher than the guidelines. Sure, it does. And the Constitution ranks higher than the statute. And that's the hierarchy. But where does the Consumer Finance Protection Bureau fit in? Well, they have some responsibility with respect to the Homeowners Protection Act. They do. They just haven't weighed in on this precise question, on the question of whether you use updated or original value. And how Fannie Mae and the CFPB would work out is something for the future. But I want to say that we sympathize with Ms. Freed. We understand her predicament. But the statute can't mean one thing for Ms. Freed and one thing for everybody else. It's true that she faces some higher PMI. But on balance, she is way ahead as a result of her life. I thought that the Consumer Financial Protection Bureau put out guidance that says, in part, that, quote, the PMI cancellation and termination rights that the HPA provides to borrowers. And that was in its bulletin 2015-03. Right, but that's not addressing the question of whether they should use updated value or not. That's saying, in general, you have to comply with the statute. We agree. But the question in this case is, what does the statute mean? You should construe it with respect to the statutory purpose. You should construe it with respect to Congress's decision and intent to benefit, particularly the hardest-hit people. The irony of this case is the people who refinance, richer people, will get their PMI benefits terminated more quickly than the people who are in the HAMP program. And that can't be right. And with respect to Ms. Freed in particular, as I mentioned, she's net ahead after her loan modification. She will not pay the full 12 years because she has permissive PMI termination, which will happen when she hits 80% of her loan balance. And in any event, there's automatic termination at the midway point of a loan. There's three provisions for termination. It's either automatic, customer-initiated, or final. So she hits 80% of what, 463? Right. 80% of 463 is roughly about 435, maybe? My understanding is she's eligible now for permissive cancellation. That would make sense because the old loan would have been paid down by sometime in 2016. Right. So no one's going to be paying the 36, 78%. Okay. Right. No one's paying the whole thing. But in any event, you have to look at the statutory scheme. The consequences here are not speculative. This is not a case where industry is running in and saying you better not do this because the Fannie Mae guide has been in existence since 2010, and the whole industry has lined up in reliance on it. And frankly, as I said, our role in this case is as a mortgage servicer. We're not keeping the PMI payments. Our main concern is that there are going to be millions of consumers who are reaching, because of their increased equity, are going to be expecting PMI termination. And if that doesn't happen because the rule is going to be original value as the plaintiff contends, then there are going to be millions of people who are going to be hurt much, much worse than Ms. Freed. The case we have before us right now is Ms. Freed. Right. And we're just urging that we think if you look at cases, even like King v. Burwell where the Chief Justice said there are strong textual arguments for one side, but the structure and statutory purpose convinces me otherwise, he was able to find enough room in the ACA. But here we're dealing with the structure and statutory purpose of a statute. Right. It almost sounds like if these HAMP guidelines and these Fannie Mae servicing guidelines should be put into the statute, that's something that Congress needs to do rather than us. Well, that couldn't happen. I mean, here the HPA was adopted before the HAMP program. So if Congress had known that HAMP would be in existence in 2000, you know, HAMP was created in 2009. Congress would have undoubtedly done it. But still the question is how do you create a system that works? How can you create a system that is generally going to work for consumers and allow them to capture the benefit of the increased equity in their homes? Because that's important for millions of American homeowners. And that's why Fannie Mae has it this way. The statute and the mortgage securities industries have grown up along this understanding. And we think there's enough room in the statute to allow you to say this is an implied term or condition or implied in fact or implied in law as part of the contract. Before you sit down, one question. What's the status of this Blake lawsuit which alleges that there have been kickbacks to J.P. Morgan with regard to the PMI, the insurance? I'm not aware of the status, Your Honor. I'm sorry. You can submit a letter if you prefer, but I don't know. That's fine. You can just send something very shortly at your convenience. Okay. Very good. Thank you. Thank you so much. I would ask if you would get together with the clerk's office afterwards and have a transcript prepared and split it evenly between the two sides. Yes, Your Honor. We will do that. Thank you very much. Thank you, Your Honor. It's really a pleasure having both of you. Thank you so much.